ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 28 2006

at ___ o'clock and ___ min. ___ M
SUE BEITIA, CLERK

EDWARD H. KUBO, JR.   #2499
United States Attorney
District of Hawaii

FLORENCE T. NAKAKUNI #2286
Chief, Narcotics Section

CHRIS A. THOMAS       #3514
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
E-mail:  Chris.Thomas@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 05-00206-03 JMS |
| Plaintiff, | ) | MEMORANDUM OF PLEA AGREEMENT |
| vs. | ) | |
| KALE ORNELLAS, | ) | DATE: September 28, 2006 |
| | ) | TIME: 10:00 a.m. |
| Defendant. | ) | JUDGE: Honorable J. Michael Seabright |

MEMORANDUM OF PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the UNITED STATES OF AMERICA, by its attorney, the United States Attorney for the District of Hawaii, and the defendant, KALE ORNELLAS (hereinafter "Defendant"), and his attorney, Richard L. Hoke, Esq., have agreed upon the following:

1.  Defendant acknowledges that he is charged in an Indictment with one (1) count of a violation of Title 21, United States Code, Section 846 (Count 1 - Conspiracy to possess with intent to distribute in excess of fifty (50) grams of methamphetamine); two counts of a violation Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A) (Counts 3 & 5 - Possession with intent to distribute in excess of fifty (50) grams of methamphetamine); and three counts of a violation of Title 21, United States Code, Section 843(b)(Counts 6, 7 & 8 - unlawful use of a communications facility.

2.  Defendant has read the charges against him contained in the Indictment, and the charges have been fully explained to him by his attorney.  In making his decision to plead guilty to Count 1 of the Indictment, Defendant has had ample opportunity to consult with his undersigned defense attorney, and Defendant is satisfied with the legal advice and representation of his defense attorney.

3.  Defendant fully understands the nature and elements of the crime with which he has been charged.

4.  Defendant will enter a voluntary plea of guilty to Count 1 of the Indictment.  The Government agrees to move to dismiss Counts 3, 5, 6, 7 and 8 contained in the Indictment as to Defendant in this case, after the sentencing of Defendant.

5. Defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6. Defendant enters this guilty plea because he is in fact guilty of conspiracy to possess with intent to distribute in excess of 50 grams or more of methamphetamine. Defendant further agrees that his guilty plea to the charge is voluntary and not the result of force or threats.

7. Defendant understands that the penalties for the offense to which he is pleading guilty is as follows:

   A. A mandatory minimum term of imprisonment of ten years and up to life;

   B. A fine of up to $4,000,000; and

   C. A term of supervised release of not less than five years and up to life;

   Defendant must also pay a $100 special assessment as to the count to which the Defendant is pleading guilty[1]. Defendant agrees to pay $100 for the count to which he is pleading guilty to the United States Attorney's Office, to be credited to said special assessments, before the commencement of any portion of sentencing. Defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the

---

[1] The $100 special assessment is mandatory pursuant to Title 18 U.S.C. § 3013(a)(2)(A).

prosecution will allow, though not require, the prosecution to withdraw from this agreement at its option.

At the discretion of the court, defendant may also be denied any or all federal benefits, as that term is defined in 21 USC §862, (a) for up to five years if this is defendant's first conviction of a federal or state offense consisting of the distribution of controlled substances, or (b) for up to ten years if this is defendant's second conviction of a federal or state offense consisting of the distribution of controlled substances. If this is defendant's third or more conviction of a federal or state offense consisting of the distribution of controlled substances, the defendant is permanently ineligible for all federal benefits, as that term is defined in 21 USC §862(d).

8. Defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charge to which defendant is pleading guilty:

A. Since in or around July 2002, the Defendant did enter into an agreement with his co-defendants Audwin Aiwohi, Eric Castro, Shawn Aguiar, aka "Rivers", and Randolph Aiwohi, aka "Randy," and others, to possess with intent to distribute and to distribute 50 grams or more of methamphetamine in Hawaii.

B. In 2002, Defendant informed Audwin Aiwohi that he had a contact, Eric Castro, who was married to Defendant's

cousin. Eric Castro was a resident of California. Defendant informed Audwin Aiwohi that Eric Castro would be able to supply methamphetamine to Audwin Aiwohi and Defendant.

C. In 2002, Eric Castro, Defendant and Shawn Aguiar met in Ontario, California to discuss the price and the method of how the methamphetamine would be supplied and transported from California to Hawaii.

D. Pursuant to an agreement among Audwin Awiohi, Defendant and Shawn Aguiar, and starting in 2002, Audwin Aiwohi and Defendant coordinated the shipments and distribution of the methamphetamine that was supplied by Eric Castro. Shawn Aguiar transported the methamphetamine from California to Hawaii, and Audwin Aiwohi and the Defendant distributed the methamphetamine that was brought to Hawaii. In 2005, Audwin Aiwohi's brother, Randolph Aiwohi, became involved in the distribution of the methamphetamine in Hawaii.

E. Since 2002, the usual method used by this conspiracy involved: 1) money from Audwin Aiwohi, Defendant and Shawn Aguiar pooled together and transported by Shawn Aguiar to Eric Castro in California; 2) Shawn Aguiar worked for his father's business - AMPAC (America Pacific Incorporated - International) which transported cattle from Hilo, Hawaii to California every other month. Shawn Aguiar smuggled the money aboard the cattle containers from Hawaii to California; 3) upon

arrival in California, Shawn Aguiar met with Eric Castro in Ontario, California and gave the money to Eric Castro in exchange for which Eric Castro accepted the money and gave the methamphetamine to Shawn Aguiar; 4) Shawn Aguiar smuggled the methamphetamine by placing it into a duffel bag and concealed the duffel bag in a feed trough of the empty cattle container destined for its return trip from California to Hawaii; 5) upon arrival in Hawaii, Shawn Aguiar removed the methamphetamine from the cattle container and delivered the methamphetamine to Audwin Aiwohi and Defendant who distributed the methamphetamine; and 6) proceeds from the sale of the methamphetamine were used, in part, to order more methamphetamine and the cycle was thereafter repeated.

    F.    Between July 2002 and May 2005, utilizing the method described above, Audwin Aiwohi, and Defendant purchased more than 75 pounds of methamphetamine from Castro, which was transported from California to Hawaii for further distribution. Shawn Aguiar left the conspiracy during part of the year 2004 and returned in 2005 and was involved in the purchase and distribution of a total of 45 pounds of methamphetamine throughout his involvement. In or around 2005, Randolph Aiwohi also became involved and he assisted in the distribution of methamphetamine in Hawaii.

G.  The methamphetamine obtained from Castro was purchased at a price which ranged between $13,000 and $19,000 per pound.

H.  In addition to transporting methamphetamine through the use of cattle containers, Defendant and his co-conspirators also used other methods. In or around March of 2005, Eric Castro shipped from California to Hawaii approximately 8½ pounds of methamphetamine concealed in the engine manifold and engine casing of a 1994 Jeep Cherokee automobile registered to Eric Castro. Eric Castro flew to Hilo, Hawaii, claimed the vehicle, obtained the methamphetamine from the engine manifold and distributed it to Defendant. The methamphetamine was taken to Audwin Aiwohi's residence where it was weighed out in smaller amounts for distribution. Castro was paid a total of $30,000 at this time.

I.  On May 12, 2005, Agents and Officers executed a search warrant for the residence of Audwin Aiwohi located at 18-2458 N. Glenwood Road, Mountain View, Hawaii. As a result of the search warrant, Agents and Officers seized approximately seven and one-half pounds of methamphetamine that was concealed in various areas of the property. Additionally, Agents and Officers seized approximately $192,523 in U.S. currency. Audwin Aiwohi admitted that the $192,523 in U.S. currency constituted drug

proceeds obtained by him as a result of his involvement in the conspiracy charged in Count 1 of the Indictment.

  J. The above described methamphetamine that was seized from the property owned by Audwin Aiwohi was analyzed by the Drug Enforcement Administration Laboratory which resulted in a positive finding for d-methamphetamine HCl in the amount of 3364.8 grams with a purity of 98%.

 9. Pursuant to CrimLR32.1 of the Rules of the United States District Court for the District of Hawaii, the parties agree that the charge to which the defendant is pleading guilty adequately reflects the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

 10. Pursuant to CrimLR32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of Defendant in connection with this matter:

  A. Defendant admits that the factual representations as stated in paragraph 8 of this Memorandum of Plea Agreement are true and correct.

 11. The Defendant is aware that he has the right to appeal the sentence imposed under Title 18, United States Code, Section 3742(a). However, in exchange for the concessions made by the

prosecution in this agreement, Defendant knowingly and voluntarily waives the right to appeal, any sentence imposed by the Court, including any order of restitution, and the manner in which that sentence was determined. The only exceptions to this complete waiver are that Defendant retains the right to appeal: (1) any sentences that exceeds the maximum punishment permitted under law; (2) the upward departure portion of his sentence if the Court, in imposing sentence, departs (as that term is used in Part K of the Sentencing Guidelines) upward from the guideline range determined by the Court to be applicable to the Defendant.

    A.   The Defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, subject only to the exception that the Defendant may make such a challenge based on a claim of ineffective assistance of counsel.

    B.   The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

    12.   The Defendant understands that the District Court in imposing sentence will not be bound by the provisions of the Sentencing Guidelines and that the Sentencing Guidelines are advisory. Subject to the exceptions noted in the previous paragraph, the Defendant is surrendering his right to challenge

any sentence within the statutory maximum, or the manner in which it was determined, including, but not limited to, a sentence that the Defendant perceives to be an incorrect application of the Guidelines. The Defendant further agrees that there is no promise or guarantee of the applicability or non-applicability of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

13. The Defendant understands that pursuant to Guideline 6B1.1(c), this Agreement cannot be accepted or rejected by the Court until there has been an opportunity by the Court to consider a Presentence Report, unless the Court decides that a Presentence Report is unnecessary pursuant to Guideline 6A1.1. The Defendant understands that the Court will not accept an agreement unless the Court determines that the charges contained in the Indictment adequately reflects the seriousness of the actual offense behavior and accepting the agreement will not undermine the statutory purposes of sentencing.

14. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    A. If Defendant persisted in a plea of not guilty to the charges against him, he would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by a judge sitting without a jury. The Defendant has a right to a jury trial. However, in order that the trial be conducted by

the judge sitting without a jury, the Defendant, the prosecution, and the judge all must agree that the trial be conducted by the judge without a jury;

      B.  If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random.  Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges.  The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty.  The jury would be instructed that the Defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt;

      C.  If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the Defendant's guilt beyond a reasonable doubt;

      D.  At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the Defendant.  Defendant would be able to confront those prosecution witnesses and his attorney would be able to cross-examine them.  In turn, Defendant could present witnesses and other evidence on his own behalf.  If the witnesses

for the Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court; and

      E.  At a trial, the Defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.

      F.  The Defendant understands that he has a right to a jury determination, beyond a reasonable doubt, of the drug type and quantity as alleged in the indictment and that by pleading guilty he is giving up that right.

14. Defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph. Defendant's attorney has explained those rights to him and the consequences of the waiver of those rights.

15. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreement reached, other than those set forth in this Agreement, to induce Defendant to plead guilty.

16. Should the Court refuse to accept this Agreement, it is null and void and neither party shall be bound thereto. The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.

17. Defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of Defendant's conduct regarding the charge against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

18. The Defendant agrees that he will fully cooperate with the United States.

    A. He agrees to testify truthfully at any and all trials, hearings, or any other proceedings at which the prosecution requests him to testify, including, but not limited to, any grand jury proceedings, trial proceedings involving co-Defendants and others indicted later in the investigation, and related civil proceedings;

    B. Defendant agrees to be available to speak with law enforcement officials and to representatives of the United States Attorney's Office at any time and to give truthful and complete answers at such meetings, but he understands he may have his counsel present at those conversations, if he so desires;

    C. Defendant agrees he will not assert any privilege to refuse to testify at any grand jury, trial, or other proceeding, involving or related to the crime in the Indictment or any subsequent charges related to this investigation at which the prosecution requests him to testify;

D.  Should any criminal prosecution be brought against Defendant by the U.S. Attorney's Office, the prosecution will not offer in evidence in its case-in-chief, or in connection with any sentencing proceeding for the purpose of determining an appropriate sentence, any statements made by Defendant at any and all debriefing meetings related to this case, except in a prosecution for false statements, obstruction of justice, or perjury;

E.  Notwithstanding paragraph 18(D) above, the prosecution may use (i) information derived directly or indirectly from any and all debriefing meetings for the purpose of obtaining and pursuing leads to other evidence, which evidence may be used in any prosecution of Defendant by the prosecution, and (ii) statements made by Defendant at any and all debriefing meetings and all evidence obtained directly or indirectly from those statements for the purpose of cross-examination should Defendant testify, or to rebut any evidence offered by or on behalf of Defendant in connection with the trial and/or at sentencing, should any prosecution of Defendant be undertaken; and

F.  Pursuant to Section 1B1.8(a) of the Sentencing Guidelines, the prosecution agrees that self-incriminating information provided pursuant to this Agreement to cooperate will not be used in determining the applicable guideline range, except

as may be provided in this Agreement and under Section 1B1.8(b) of the Sentencing Guidelines.

19. In the event that the Defendant does not breach any of the terms of this Agreement but the Court nonetheless refuses to accept the Agreement after Defendant has made statements to law enforcement authorities or representatives of the United States Attorney's Office pursuant to this Agreement, the prosecution agrees not to use said statements in its case-in-chief in the trial of the Defendant in this matter. Defendant understands that this does not bar the use of information and evidence derived from said statements or prohibit the use of the statements by the prosecution in cross-examination or rebuttal.

20. Pursuant to Guideline Section 5K1.1 and Rule 35(b), Federal Rules of Criminal Procedure, the prosecution may move the Court to depart from the Guidelines on the ground that the Defendant has provided substantial assistance to authorities in the investigation or prosecution of another person who has committed an offense. Pursuant to Title 18, United States Code, Section 3553(e), the prosecution may also move the Court to impose a sentence below the level established by statute as a minimum sentence for the charge contained in the Indictment on the ground that Defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense. Defendant understands that:

A.  The decision as to whether to make such a request or motion is entirely up to the prosecution.

B.  This Agreement does not require the prosecution to make such a request or motion.

C.  This Agreement confers neither any right upon the Defendant to have the prosecution make such a request or motion, nor any remedy to Defendant in the event the prosecution fails to make such a request or motion.

D.  Even in the event that the prosecution makes such a request or motion, the Court may refuse to depart from the Guidelines or to impose a sentence below the minimum level established by statute.

DATED: Honolulu, Hawaii, _____.

AGREED:

_____
EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

_____
FLORENCE T. NAKAKUNI
Chief, Narcotics Section

_____
CHRIS A. THOMAS
Assistant U.S. Attorney

_____
KALE ORNELLAS
Defendant

_____
RICHARD L. HOKE, JR.
Attorney for Defendant

USA v. Kale Ornellas, et al.
Memo of Plea Agreement
Cr. No. 05-00206-03 JMS